UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILIAN KILLEEN,<br><br>                                Plaintiff,<br><br>v.<br><br>RICHARD V. SPENCER, Secretary of<br>the Department of the Navy,<br><br>                                Defendant. | Case No.: 18-cv-1590-AJB-NLS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS, (Doc. No. 14)** |

Before the Court is Defendant Richard V. Spencer, Secretary of the Department of the Navy's ("Defendant") motion to dismiss Plaintiff Lillian Killeen ("Plaintiff's") discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII"). (Doc. No. 14.) Plaintiff opposed the motion, (Doc. No. 16), and Defendant replied, (Doc. No. 17). For the reasons stated herein, the Court **DENIES** Defendant's motion.

## I. BACKGROUND

Plaintiff brings this action against Defendant, alleging violations of Title VII of the Civil Rights Act of 1964. (First Amended Complaint ("FAC"), Doc. No. 13 ¶ 1.) She asserts that Defendant has systemically acted with the purpose and effect of denying to Plaintiff the same environment, terms, and conditions of employment as others similarly situated because of her race and national origin as a Filipina. (*Id.* ¶ 3.) Specifically, Plaintiff claims the United States Navy improperly reprimanded her for speaking her native

1

language, Tagalog, while at work. (*Id.* ¶¶ 19–25.) Plaintiff alleges that she was given a "Letter of Expectations" that requested Plaintiff and her subordinates "always use the English language when discussing work topics in the work environment." (*Id.* ¶ 20.) On the basis of the Letter of Expectations, Plaintiff was ineligible to receive her Performance Award of 2014, which would have amounted to at least $1,000. (*Id.* ¶ 34.) Additionally, Plaintiff states she was retaliated against by her supervisor, Maria Pena, for filing an EEO Complaint after receiving her Letter of Expectations. (*Id.* ¶¶ 43–62.) Plaintiff filed her first Complaint on July 13, 2018, stating two claims for relief: (1) discrimination based on race/national origin, and (2) retaliation. (Doc. No. 1.)

On October 5, 2018, Defendant filed its first motion to dismiss and the Court granted the motion with leave to amend. (Doc. No. 11.) Subsequently, Plaintiff filed a FAC with additional facts that further explained the purpose and extent of her and her subordinates' use of Tagalog while at work. (FAC ¶¶ 21–23.) The FAC alleges that "all of [these employees] spoke better Tagalog than English," thus some employees occasionally requested that she "explain concepts about work-related topics in Tagalog" rather than English. (*Id.*) Furthermore, Plaintiff asserts that Spanish-speaking employees were not reprimanded for speaking Spanish while at work. (*Id.* ¶ 28.)

On September 13, 2019, Defendant filed a second motion to dismiss the Title VII discrimination claim, alleging that the FAC does not sufficiently allege facts to support this claim. (Doc. No. 14.) Plaintiff opposed the motion, (Doc. No. 16), and Defendant replied, (Doc. No. 17.) This order follows.

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).

However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570(2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## III.   DISCUSSION

While Plaintiff asserts two claims for relief in her FAC, Defendant's motion to dismiss only challenges Plaintiff's first claim for discrimination based on race/national original. (Doc. No. 16 at 1–2.) In short, Defendant argues that Plaintiff's discrimination claim should be dismissed because Plaintiff cannot satisfy the requirements for a Title VII workplace discrimination claim. (Doc. No. 14 at 3–5.)

### A.   Legal Framework

Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1). To bring a prima facie Title VII discrimination claim, the Plaintiff must show that "(1) she was a member of protected class; (2) she was qualified for her position and performing her job satisfactorily; (3) that she experienced adverse employment action; and (4) that similarly situated individuals outside the protected class were treated more favorably." (Doc. No. 16 at 9); *Chuang v. Univ. of Cal. Davis, Bd. of Tr.*, 225 F.3d 1115, 1123 (9th Cir. 2000).

There are two types of Title VII discrimination claims: (1) disparate treatment, and

3

(2) disparate impact.  *See Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1484 (9th Cir. 1993). While the disparate treatment theory requires proof of discriminatory intent, intent is irrelevant to a disparate impact theory. *Id.* To establish a prima facie case in a Title VII disparate impact claim "the plaintiff may not merely assert that the policy has harmed members of the group to which he or she belongs. Instead, the plaintiff must prove the existence of adverse effects of the policy". *Garcia*, 998 F.2d at 1486. To establish a prima facie case in a Title VII disparate treatment claim, the Plaintiff must show that there was discriminatory intent in addition to the four elements that make up a prima facie Title VII discrimination claim. *International Brother of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977).

Defendant relies on the case *Garcia v. Spun Steak*, 998 F.2d 1480 (9th Cir. 1993) for the proposition that an English-only policy is not per se discrimination under Title VII. (Doc. No. 14 at 4.) In *Garcia*, the defendant employer implemented a policy requiring its bilingual employees to speak only English while at work. *Id.* at 1483. The employees and their union brought an action against the defendant employer, alleging the English-only policy violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. *Id.* at 1483–84. The Ninth Circuit first noted that "[t]o make out a prima facie case of discriminatory impact, a plaintiff must identify a specific, seemingly neutral practice or policy that has a significantly adverse impact on persons of a protected class." *Id.* at 1486. If the prima facie case is established, the burden shifts to the employer to "demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." *Id.*

The *Garcia* court went on to hold that the employees had failed the first step of establishing a prima facie case because they did not prove any discriminatory impact. *Id.* at 1490. Importantly, the court concluded it was not bound by the EEOC guidelines, which provided that an employee meets the prima facie case in a disparate impact cause of action merely by proving the existence of an English-only policy. *See* 29 C.F.R. § 1606.7(a), (b) (1991). Under the EEOC's scheme, an employer must always provide a business

4

justification for such an English-only policy. *Id.* at 1489. But the court noted that the employees could not reach the question of business justification because they failed to establish a prima facie case in the first instance. *Id.* at 1490. The court found that an English-only policy could not have a significant adverse impact on the bilingual employees able to speak both English and Spanish. *Id.* at 1487. The court rejected the Spanish-speaking employees' argument that fully bilingual employees are hampered in the enjoyment of the privilege to converse on the job because switching from one language to another is not fully volitional. The court reasoned that "Title VII is not meant to protect against rules that merely inconvenienced some employees, even if inconvenience falls regularly on protected class but, rather, Title VII protects against only those policies that have significant impact." *Id.* at 1488.

### B.    Plaintiff's Title VII Discrimination Claim

In order to state a Title VII disparate impact claim, Plaintiff's FAC needs to contain facts that indicating the significant adverse impact of the English-only policy on Plaintiff. *Garcia*, 998 F.2d at 1486; (Doc. No. 11 at 2.) To meet this requirement, Plaintiff must provide facts demonstrating that the use of Tagalog rather than English while at work was necessary—not just preferable or more convenient—for her and her subordinates to perform their work functions. *See Andrews v. PRIDE Indus.*, No. 2:14-CV-02154-KJM-AC, 2017 WL 119803, at *12 (E.D. Cal. Jan. 12, 2017). Plaintiff alleges that the use of Tagalog was a "faster and more efficient way of communication" in the workplace, and that her subordinates would request explanation of work concepts for better understanding. (FAC ¶ 22.) However, Plaintiff has failed to allege that the use of Tagalog rather than English in work-related matters was necessary. Notably absent from the FAC are any facts supporting allegations that Plaintiff and her subordinates were unable to speak English. Rather, the FAC reveals that Plaintiff and her subordinates are capable of speaking both English and Tagalog. (*Id.* ¶ 21.) Thus, with *Garcia* as the guiding principle, Plaintiff has not demonstrated that the existence of an English-only policy, by itself, had a significant adverse impact on Plaintiff or other Tagalog-speakers, since the employees were still able

5

to perform their job functions and speak a common language.

However, this case is distinguishable from *Garcia* in one critical way. In opposition, Plaintiff argues, "Defendant completely disregards Plaintiff's allegations regarding the different treatment of Tagalog-speaking employees compared to Spanish-speaking employees." (Doc. No. 16 at 9.) A member of a protected class can establish a disparate treatment claim if they can show that they were being treated less favorably due to their status as a member of a protected class. *See International Brother of Teamsters*, 431 U.S. at 335 n.15. For the English-only policy to be considered discriminatory under a disparate treatment claim, the Plaintiff must show that there was discriminatory intent behind the policy. *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) ("Where, as here, a plaintiff is challenging a facially neutral policy, there must be a specific allegation of discriminatory intent."). "[P]roof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Id.*

In the FAC, Plaintiff has alleged that the Spanish-speaking employees are not being reprimanded for speaking Spanish while at work, which may show that the Tagalog-speaking employees are being treated less favorably than other employees who are not in that particular protected class. (FAC ¶ 28.) Indeed, Plaintiff states that "the 'English-only' rule is applied in a discriminatory manner" because the Spanish-speaking employees were not reprimanded for failing to adhere to the English-only policy, while the Tagalog-speaking employees were reprimanded for speaking Tagalog while at work. (*Id.* ¶ 28.) The facts in the FAC demonstrate Plaintiff regularly observed her supervisor converse in Spanish to her subordinates to explain concepts during work hours, in front of employees who do not speak Spanish. (*Id.* ¶ 38.) Plaintiff maintains that "[t]he animus is further proven by the fact that Defendant categorically extended Plaintiff's reprimand to her subordinates" and "Defendant not only instructed Plaintiff to only speak English, but also to 'ensure [her] subordinates do the same.'" (*Id.* ¶ 20.) Thus, since discriminatory intent may be inferred from the differences in treatment, the fact that the English-only rule did not apply to the Spanish-speaking employees, may indicate that there was in fact

6

discriminatory intent. *International Brother of Teamsters*, 431 U.S. at 335 n.15.  Therefore, accepting all these factual allegations as true, and drawing all reasonable inferences in favor of Plaintiff, Plaintiff has stated a claim for disparate treatment under Title VII. *See Thompson*, 295 F.3d at 895; *Garcia*, 998 F.2d at 1489 ("We do not foreclose the prospect that in some circumstances English-only rules can exacerbate existing tensions, or, when combined with other discriminatory behavior, contribute to an overall environment of discrimination.").

**IV.    Conclusion**

Based on the foregoing, the Court **DENIES** Defendant's motion to dismiss Plaintiff's first claim for relief, concluding that Plaintiff sufficiently alleged facts stating a claim for discrimination under Title VII. (Doc. No. 14.)

Dated:  July 14, 2020

Hon. Anthony J. Battaglia
United States District Judge

18-cv-1590-AJB-NLS